United States District Court
Southern District of Texas
**ENTERED**
July 05, 2022
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| TRANSOCEAN U.S. SAVINGS PLAN and THE TRANSOCEAN ADMINISTRATIVE COMMITTEE, | § | |
| Plaintiffs, | § | |
| v. | § | CIVIL ACTION NO. H-21-3969 |
| BURGUNDI THURE, INDEPENDENT ADMINISTRATOR OF THE ESTATE OF EMMA CHARLENE TAYLOR, | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

In 1996, Emma Charlene Taylor listed her then-husband, Jerome Taylor, as a primary (and the only) beneficiary of an employee welfare benefit plan offered by her employer, Transocean Drilling, Inc. In 2005, Charlene Taylor and Jerome Taylor divorced. The divorce decree "divested" Jerome Taylor of "all right, title, interest, and claim in . . . [t]he individual retirement accounts, simplified employee pensions, annuities, and variable annuity life insurance benefits in [Charlene's] name." (Docket Entry No. 20-1, at 3).

Charlene Taylor died in 2019. The plan administrator paid Ms. Taylor's estate $137,902.35 under the employee welfare plan. After taxes, the estate received $110,861.09. (Docket Entry No. 20-1, at 7).

In 2021, two years after Transocean's plan administrator paid Ms. Taylor's estate, Jerome Taylor, Charlene Taylor's ex-husband, sued Fidelity Workplace Services, LLC and Transocean, claiming that he was entitled to his ex-wife's plan benefits because she had listed him as the plan beneficiary in 1996. (Docket Entry No. 20-1, at 9). When Jerome Taylor filed suit, he had been

divorced from Ms. Taylor for sixteen years. The plan administrator reviewed Jerome Taylor's claim and determined that because "Ms. Taylor's beneficiary designation was never revoked," Jerome Taylor was entitled to the benefits. Transocean's plan administrator paid Jerome Taylor $137,902.35.

Having paid the same benefits twice, Transocean U.S. Savings Plan and the Transocean Administrative Committee (together, "Transocean") sought the return of the benefits that it alleges it paid in error to Charlene Taylor's estate. (*See* Docket Entry No. 20-1, at 40). Burgundi Thure, the estate administrator, refused to return the funds, asserting that Transocean had correctly paid the benefits to the estate and later erroneously paid the same benefits to Jerome Taylor. (Docket Entry No. 20-1, at 120). Transocean filed this lawsuit under the Employee Retirement Income Security Act (ERISA), seeking "an equitable lien on specifically identifiable funds in the amount of $137,902.35 within [the estate's] possession." (Docket Entry No. 1, at 5).

Transocean and Thure (on behalf of the estate) have filed cross motions for summary judgment. (Docket Entries No. 19, 20). Based on the motions, the responses, the parties' arguments, and the applicable case law, Transocean's motion for summary judgment is granted, and the estate administrator's cross-motion for summary judgment is denied. Final judgment is entered by separate order.

The reasons are set out below.

## I. The Summary Judgment Standard

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd ex rel. Est. of Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting FED. R. CIV. P. 56(a)). "A material fact is one that might affect the outcome of the suit

under governing law," and "a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018) (citations and internal quotation marks omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014). "A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Lamb v. Ashford Place Apartments LLC*, 914 F.3d 940, 946 (5th Cir. 2019) (citation and internal quotation marks omitted). In deciding a summary judgment motion, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his or her favor." *Waste Mgmt. of La., LLC v. River Birch, Inc.*, 920 F.3d 958, 972 (5th Cir. 2019) (alterations omitted) (quoting *Tolan v. Cotton*, 572 U.S. 650, 656 (2014)).

## II. The Summary Judgment Record

Transocean submitted the following summary judgment evidence:

- Transocean's U.S. Savings Plan, (Docket Entry No. 19-1, at 5; *see also* Docket Entry No. 20-1, at 43);
- the Summary Plan Description, (Docket Entry No. 19-1, at 83);
- Charlene Taylor's Beneficiary Designation Form, (*id.*, at 104);

- Letters of Administration and Charlene Taylor's Certificate of Death, (*id.*, at 106);
- a transaction history showing Transocean's payment to the estate, (i*d.*, at 109);
- Jerome Taylor's claim for benefits, (*id.*, at 111); and
- a transaction history showing Transocean's payment to Jerome Taylor, (*id.*, at 117).

The estate's administrator submitted the following summary judgment evidence:

- Charlene and Jerome Taylor's Final Decree of Divorce, (Docket Entry No. 20-1, at 2);
- the check from Fidelity Investments to Charlene Taylor's estate, in the amount of $110,861.09, (*id.*, at 7);
- Jerome Taylor's original state court petition against Fidelity Workplace Services and Transocean Drilling, Inc., (*id.*, at 9);
- Fidelity Workplace Services and Transocean Drilling, Inc.'s motion to dismiss Jerome Taylor's complaint, (*id.*, at 15);
- Jerome Taylor, Fidelity Workplace Services, and Transocean Drilling, Inc.'s Agreed Stipulation for Voluntary Dismissal, (*id.*, at 34);
- a declaration of Seth A. Nichamoff, counsel for Burgundi Thure, the administrator of Charlene Taylor's estate, (*id.*, at 38);
- a letter from Travis J. Sales, counsel for Transocean, requesting the estate's return of benefits to the plan, (*id.*, at 40);
- a letter from Seth A. Nichamoff, on behalf of Burgundi Thure, denying Transocean's request for the return of benefits, (*id.*, at 120); and
- a response letter from Sales to Nichamoff, (*id.*, at 122).

## III. Analysis

To obtain summary judgment, Transocean must demonstrate that under the terms of the employee welfare plan, Charlene Taylor's estate was not entitled to the benefits Transocean paid.

Transocean must also show that the money it paid to the estate is still in the estate's possession. Each issue is addressed in turn.

**A. The Party Entitled to Benefits**

Transocean's employee welfare benefits plan allows a participant to designate a beneficiary who will receive the balance of the participant's account on the participant's death. Article IV, Section 6.3 of the plan details how plan benefits should be paid in the event of a participant's death:

> Upon the death of a Participant, his or her Account shall be distributed to the Participant's surviving Spouse as Beneficiary, but if there is no surviving Spouse, or if the surviving Spouse has already consented by a qualified election pursuant to Section 6.4, to the Beneficiary or Beneficiaries designated by the Participant in the form or manner prescribed by the Committee or, if no such designation shall have been filed to his or her estate which shall be treated as the Beneficiary hereunder. No designation of any Beneficiary other than the Participant's surviving Spouse shall be effective unless in writing and received by the Participant's Employer, and in no event shall it be effective as of any date prior to such receipt. The former Spouse of a Participant shall be treated as a surviving Spouse to the extent provided under a qualified domestic relations order as described in Section 414(p) of the Code.

(Docket Entry No. 19-1, at 38).

Charlene Taylor was not married when she died. Charlene Taylor and Jerome Taylor were long divorced, and she did not remarry. Transocean has not provided evidence of a qualified domestic relations order that allows Jerome Taylor to be treated as Charlene Taylor's surviving spouse. Indeed, the divorce decree divested Jerome Taylor of any right to Charlene Taylor's "individual retirement accounts, simplified employee pensions, annuities, and other variable annuity life insurance benefits." (Docket Entry No. 20-1, at 3).

The only basis for treating Jerome Taylor as a beneficiary of the plan is Charlene Taylor's beneficiary designation form. Charlene Taylor filled out the beneficiary designation form while

she was still married to Jerome Taylor. The form names him as the "primary beneficiary" and the relationship as "spouse":

**BENEFICIARY DESIGNATION:**

Under the terms of the Savings Incentive Plan, if you are married at the time of your death, your spouse at that time is your designated primary beneficiary and will be entitled to any plan benefits unless you have *effectively* elected another primary beneficiary below. This designation supersedes any previous beneficiary designation you have made and may be revoked by you at any time by submitting a new beneficiary designation form to the Employee Benefits Department in Houston. Your Marital Status: ☐ Unmarried ☑ Married

| Primary Beneficiary Name | Relationship | Address |
|---|---|---|
| Jerome Paul Taylor | Spouse | 3231 Tynemeadow Court Katy, TX 77449 |
| Secondary Beneficiary Name (in the event primary beneficiary is not living). | Relationship | Address |

**NOTE: This section must be completed ONLY if you are married and have named someone other than your spouse as your primary beneficiary. Your spouse's consent, witnessed by a notary public or plan representative, is required for the designation to be effective.**

Plan Representative ______ Date ______ Spouse's Signature ______

This instrument was acknowledged before me on this ______ day of ______, 19 ______ Notary Public ______

My commission expires ______ State of ______ County of ______

(Docket Entry No. 19-1, at 112).

A printed part of the form states:

> Under the terms of the Savings Incentive Plan, if you are married at the time of your death, your spouse at that time is your designated primary beneficiary and will be entitled to any plan benefits unless you have effectively elected another primary beneficiary below. This designation supersedes any previous beneficiary you have made and may be revoked by you at any time by submitting a new beneficiary designation form to the Employee Benefits Department in Houston.

(*Id.*). The form then asks the participant to check the marital status box as "married" or "unmarried." Charlene Taylor checked "married."

The form included a space for the participant to list the "primary beneficiary name" and the beneficiary's "relationship" to the participant. Charlene Taylor listed Jerome Taylor on the line for "primary beneficiary name" and "spouse" as his relationship to her. She did not designate a secondary beneficiary. The same section of the form included another box beneath the following language: "NOTE: This Section must be completed ONLY if you are married and have named someone other than your spouse as your primary beneficiary. Your spouse's consent, witnessed

by a notary public or plan representative, is required for the designation to be effective." Charlene Taylor left this box blank.

Transocean argues that because Charlene Taylor designated Jerome Taylor as her primary beneficiary and did not revoke that designation, he remained the proper beneficiary at the time of her death, even though they had divorced years earlier. (Docket Entry No. 19, at 9). Transocean reasons that because the beneficiary designation instructions stated that the spouse was automatically the designated primary beneficiary, Charlene Taylor did not need to fill out any further information on the beneficiary form. By listing Jerome Taylor under "primary beneficiary name," Transocean concludes, Jerome Taylor remained Charlene Taylor's primary beneficiary even if he was no longer her spouse, as long as Charlene Taylor did not submit a new beneficiary designation form. (*Id.*, at 9 n.2).

The estate argues that at the time of Charlene Taylor's death, Jerome Taylor was no longer her primary beneficiary because they had divorced after she filled out the form. The estate acknowledges that Jerome Taylor was identified as Charlene Taylor's spouse in the "primary beneficiary" box, but argues that the only reason is that "the form call[ed] for the participant to identify either her 'Spouse' or 'another' beneficiary as the designated primary beneficiary." (Docket Entry No. 20, at 12). The estate argues that once Jerome Taylor was no longer Charlene Taylor's spouse, he ceased to be her primary beneficiary even if she did not amend the beneficiary form, because the plan provides that "a 'former Spouse' will only be treated as a 'surviving Spouse' under a [qualified domestic relations order], which is not evidenced here." (*Id.*, at 14).

The threshold issue is the appropriate standard of review under ERISA. Transocean argues that the plan administrator's plan interpretation and determination that Jerome Taylor was Charlene Taylor's designated beneficiary can be set aside only if Charlene Taylor shows that the

administrator abused its discretion, relying on *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 638 (5th Cir. 1992). (Docket Entry No. 19, at 10). The estate responds that an abuse of discretion standard does not apply to Transocean's claim for relief, and that the court should instead review the plan terms de novo.

In *Wildbur*, the Fifth Circuit stated that "[a] denial of benefits challenged under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), is reviewed under a *de novo* standard unless the plan gives the administrator 'discretionary authority to determine eligibility for benefits or to construe the terms of the plan.' If the administrator has discretionary authority, a reviewing court applies an abuse of discretion standard." 974 F.2d at 638.in

The parties agree that Transocean's plan gives the plan administrator discretionary authority to determine eligibility for benefits. (*See* Docket Entry No. 19-1, at 98 ("Benefits under the Plan will only be paid if the Administrative Committee decides, in its discretion, that a participant is entitled to them.")). But the estate does not challenge a denial-of-benefits decision under § 502(a)(1)(B), because the plan administrator awarded the estate Charlene Taylor's plan benefits. Had the administrator denied payment to the estate, the estate would have been entitled to a "written notice of decision" from the administrator informing the estate of "the specific reasons for the denial"; "the specific provisions of the Plan upon which the denial [was] based"; and "[a]n explanation of the Plan's claim review procedure, including a statement of [her] right to bring a civil action under Section 502(a) of the Employee Retirement Income Security Act of 1974 . . . following a denial of [her] claim on review." (Docket Entry No. 19-1, at 97). The estate could then administratively appeal the claim denial. (*Id.*).

The estate did not receive this information or the opportunity to appeal a denial of benefits, because the administrator determined that the estate was entitled to benefits, which the plan paid,

and then later determined that Jerome Taylor was entitled to benefits, which the plan paid. The plan paid the same benefits twice, to separate recipients. The administrator did not deny benefits to any claimant. Transocean is suing the estate under § 502(a)(3) for the return of benefits that it claims were erroneously paid twice.

Because Transocean's plan administrator is seeking the return of funds that it allegedly paid in error to Charlene Taylor's estate, as opposed to the estate asserting that the plan administrator wrongly denied benefits, the abuse of discretion standard is irrelevant. *See Conn. Gen. Life Ins. Co. v. Elite Ctr. for Minimally Invasive Surgery LLC*, Case No. 4:16-cv-00571, 2017 WL 1807681, at *2 (S.D. Tex. May 5, 2017) (declining to apply an abuse of discretion analysis to the plaintiff's § 502(a)(3) claim for the recovery of benefit overpayments because "[t]he factors applied in the abuse of discretion inquiry—whether the plan administrator had a conflict of interest, the internal consistency of the plan, the factual background of the determination, and any inferences of lack of good faith—presuppose an adverse determination").

De novo review is appropriate, but whether the court reviews the plan terms de novo or gives deference to the plan administrator's interpretation of the plan documents, the court agrees with Transocean that Jerome Taylor was the proper plan beneficiary.

This is not the first case to address whether a plan administrator correctly paid plan benefits to a participant's ex-spouse according to the terms of an unrevoked beneficiary designation form, even though the participant and designated beneficiary had divorced. Indeed, this scenario of erroneous overpayments to an ex-spouse appears common. *See, e.g.*, *Matschiner v. Hartford Life & Acc. Ins. Co.*, 622 F.3d 885 (8th Cir. 2010); *Estate of Kensinger v. URL Pharma, Inc.*, 674 F.3d 131 (3d Cir. 2012); *Andochick v. Byrd*, 709 F.3d 296 (4th Cir. 2013). The Supreme Court has twice considered cases involving a challenge to a plan administrator's distribution of plan benefits

to a deceased participant's ex-spouse. These cases are instructive in the court's identification of the "plain meaning of the language" in Transocean's plan documents. *High v. E-Systems Inc.*, 459 F.3d 573, 578 (5th Cir. 2006).

In *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001), the Supreme Court addressed whether ERISA preempted a Washington state statute "provid[ing] that the designation of a spouse as the beneficiary of a nonprobate asset is revoked automatically upon divorce." *Id.* at 143. In that case, David A. Egelhoff had designated his wife, Donna Rae Egelhoff, as a beneficiary of his work-sponsored life insurance policy and pension plan. David and Donna Egelhoff later divorced. Two months after that, David died. David had not modified his life insurance policy after the divorce, so the life insurance proceeds were paid to Donna. *Id.* at 144.

David's children sued Donna, arguing that they were entitled to recover the life insurance proceeds, "because the Washington statute disqualified Mrs. Egelhoff as a beneficiary, and in the absence of a qualified named beneficiary, the proceeds would pass to them as Mr. Egelhoff's heirs." *Id.* at 145. The Supreme Court concluded that ERISA preempted the Washington statute because "[t]he statute binds ERISA plan administrators to a particular choice of rules for determining beneficiary status. The administrators must pay benefits to the beneficiaries chosen by state law, rather than to those identified in the plan documents. The statute thus implicates an area of core ERISA concern." *Id.* at 147. Because the plan named Donna Egelhoff as the beneficiary, she was entitled to the proceeds.

Although *Egelhoff* focused on ERISA preemption, it also involved a problem similar to the one at issue here. David Egelhoff's children argued that the plan documents required the plan administrators to pay the benefits to his heirs, not to his ex-wife, even if the Washington statute did not apply. The children argued that "[b]ecause Mr. Egelhoff designated 'Donna R. Egelhoff

wife' as the beneficiary of the life insurance policy . . . once the Egelhoffs divorced, 'there was no such person as 'Donna Egelhoff *wife*'; the designated person had definitionally ceased to exist.'" *Id.* at 149 n.2 (emphasis in original).

The Court disagreed, writing:

> In effect, respondents ask us to infer that what Mr. Egelhoff meant when he filled out the form was not "Donna R. Egelhoff, who is my wife," but rather "a new legal person—'Donna as spouse[.]'" They do not mention, however, that below "Beneficiary" line on the form, the printed text reads, "First Name [space] Middle Initial [space] Last Name [space] Relationship." Rather than impute to Mr. Egelhoff the unnatural (and indeed absurd) literalism suggested by respondents, we conclude that he simply provided all of the information requested by the form. The happenstance that "Relationship" was on the same line as the beneficiary's name does not, we think, evince an intent to designate "a new legal person."

532 U.S. at 149.

In *Kennedy v. Plan Adm'r for DuPont Sav. & Ins. Plan*, 555 U.S. 285 (2009), the Supreme Court again considered whether an ERISA plan was correct in paying a beneficiary's ex-wife, based on an unrevoked beneficiary designation form. In that case, William Kennedy designated his wife, Liv Kennedy, as a beneficiary under his employer's savings and investment plan. *Id.* at 288. Over twenty years later, the two divorced, and seven years after that, William Kennedy died. *Id.* at 289. William Kennedy never modified his benefits plan to remove Liv Kennedy as beneficiary. *Id.* After his death, DuPont—William Kennedy's employer—"relied on William's designation form and paid the balance of some $400,000 to Liv." *Id.* at 290. William Kennedy's estate sued DuPont, arguing that Liv Kennedy had waived her right to the plan benefits under the Kennedys' divorce decree. *Id.*

The Supreme Court held that the "plan administrator did its statutory ERISA duty by paying the benefits to Liv in conformity with the plan documents." *Id.* at 299–300. The Court noted that a "plan administrator is obliged to act 'in accordance with the documents and

instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [Title I] and [Title IV] of [ERISA],' . . . and ERISA provides no exemption from this duty when it comes time to pay benefits." *Id.* at 300. Otherwise, the Court reasoned, plan administrators would have required "to examine a multitude of external documents that might purport to affect the dispensation of benefits." *Id.* at 301. Accordingly, the plan administrator did not have an obligation to seek out and assess the Kennedys' divorce decree to see if it overrode William Kennedy's beneficiary designation.

*Kennedy* and *Egelhoff* are instructive. The Transocean plan provided that "[n]o designation of any Beneficiary other than the Participant's surviving Spouse shall be effective unless in writing . . . ." (Docket Entry No. 19-1, at 38). When Charlene Taylor filled out the form, she and Jerome were still married, so she did not need to designate her then-husband by name as her beneficiary in the form. (*Cf.* Docket Entry No. 19-1, at 87 ("Your legal spouse is automatically your beneficiary.")). She nonetheless did put his name as her "primary designated beneficiary." When Charlene Taylor died, Jerome Taylor was no longer her "spouse," but he did not cease to be her designated beneficiary simply because their marriage ended. *See Egelhoff*, 532 U.S. at 149 n.2. The plan administrator did not have an obligation to determine whether Charlene Taylor intended Jerome Taylor to be her designated beneficiary only if he remained her spouse, or whether she had "simply provided all of the information requested by the form." *Id.*; *see Boyd v. Metropolitan Life Ins. Co.*, 636 F.3d 138, 143–44 (4th Cir. 2011) ("[*Kennedy*] relieve[d] plan administrators of the need to divine obscure participant intentions and of the spector of a lengthy fight in court."); *Matschiner*, 622 F.3d at 888 ("[T]he plan documents, not the divorce decree, are controlling.").

Charlene Taylor could have revoked her designation of Jerome Taylor as her beneficiary by submitting a new beneficiary designation form, before or after they divorced. (*See* Docket

Entry No. 19-1, at 112 ("[A beneficiary designation can] be revoked . . . at any time by submitting a new beneficiary designation form to the Employees Benefits Department in Houston.")). She did not. While there may be a basis to doubt that Charlene Taylor still intended to have her ex-husband be her beneficiary years after they had divorced, speculation about that intent is not relevant or helpful. "[B]y giving a plan participant a clear set of instructions for making [her] own instructions clear, ERISA forecloses any justification for enquiries into nice expressions of intent[.]" *Kennedy*, 555 U.S. at 301. "Under the terms of the [designation form]," Jerome Taylor was her designated beneficiary. "The plan provided an easy way for [Charlene Taylor] to change the designation, but for whatever reason [s]he did not." *Id.* at 303. Jerome Taylor is the legally correct beneficiary, not Charlene Taylor's estate.

**B. Availability of Equitable Relief**

Even though Transocean was not required to pay plan benefits to Charlene Taylor's estate, it did so. It now seeks a remedy for this mistake and the self-inflicted cost. Transocean may seek only equitable relief for a civil action under 29 U.S.C. § 1132(a)(3). In its complaint, Transocean sought "equitable relief under ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3), to recover Plan benefits erroneously paid to [the estate], including, but not limited to, imposition of an equitable lien on specifically identifiable funds in the amount of $137,902.35 within [the estate's] possession." (Docket Entry No. 1, at 5).

"[A]n equitable lien placed on 'specifically identifiable' funds that [are] 'in the possession of [the plaintiff]' [is] an 'appropriate equitable remedy' under § 1132(a)(3)." *AT&T, Inc. v. Flores*, 322 F. App'x 391, 393–94 (5th Cir. 2009) (quoting *Sereboff v. Mid-Atlantic Med. Servs.*, 547 U.S. 356, 362 (2006)). The Supreme Court has identified two types of equitable liens—an "equitable

lien by agreement" and an "equitable lien . . . as a matter of restitution." *Sereboff*, 547 U.S. at 364–65 (quotation marks omitted).

Transocean does not seek an "equitable lien by agreement." Transocean does not "point to any particular language used in its plan documents" that "explicitly or by implication, created an equitable lien over its alleged" erroneous payment to Charlene Taylor's estate. *Cigna Healthcare of Texas, Inc. v. VCare Health Servs., PLLC*, No. 3:20-cv-0077-D, 2020 WL 3545160, at *4–5 (N.D. Tex. June 29, 2020). Nothing in the plan documents requires Charlene Taylor's estate to return benefit payments that the Transocean Administrative Committee decided the estate was entitled to. Transocean does not invoke a contract-like basis for repayment. Transocean instead seeks an equitable lien as a matter of restitution.

An "equitable lien" provides "restitution in equity" when it "involve[s] enforcement of a 'constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff [can] clearly be traced to particular funds or property in the defendant's possession." *Montanile v. Bd. of Trustees of Nat'l Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 142 (2016) (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002)).

Even if Transocean had an equitable lien on the mistaken payment "as of the moment [the payment] was made," the "dissipation of those funds would eliminate both the lien and [Transocean's] ability to enforce it via ERISA § 502(a)(3)." *JPMorgan Chase Severance Pay Plan Admin. v. Baez*, Case No. H-21-1688, 2021 WL 4391232, at *8 (S.D. Tex. Sept. 24, 2021) (quoting *Cent. States, Se. & Sw. Areas Pension Fund v. Rodriguez*, No. 18-cv-7226, 2021 WL 131419, at *3 (N.D. Ill. Jan. 14, 2021)). Transocean could have, but did not, request a preliminary injunction pending final resolution of this case to enjoin the estate from further spending,

transferring, or otherwise diminishing the funds. *See, e.g.*, *Retirement Comm. of DAK Ams. LLC v. Brewer*, 867 F.3d 471, 478 (4th Cir. 2017) (the plan requested, and the court granted, a preliminary injunction to prevent dissipation of an alleged pension benefit overpayment); *Verizon Emp. Benefits Comm. v. Heinlein*, No. 3:05-CV-2120, 2006 WL 8437665, at *1 (N.D. Tex. Nov. 8, 2006) (seeking a preliminary injunction prohibiting the defendant from using the alleged overpayment). And ERISA does not contain an "exception" for available relief "if [a] defendant wrongly dissipates the equitable lien to thwart its enforcement." *Montanile*, 577 U.S. at 148.

Transocean's motion for summary judgment did not identify record evidence showing that there are specific identifiable funds in the amount of $137,902.35 within the estate's possession. Transocean has the burden of establishing that the estate remained in possession of the plan benefits. *See Rodriguez*, 2021 WL 131419, at *2 (denying summary judgment because the "[p]laintiffs have put forth no evidence as to what happened to th[e] funds after plaintiffs deposited them into the Account"). At the hearing on the motions, the court asked counsel for both parties about the status and location of the funds. Neither party could initially tell the court whether all or any of the $137,902.35 payment to the estate was still in the estate's possession. The estate agreed to determine and file a stipulation as to the amount of funds that remained in the estate's possession. That stipulation states that Thure, the estate's independent administrator, holds "in her possession $87,439.03 from the disbursed benefits totaling $111,014.03 made the subject of this action. [These] funds are held at Liberty Bank in Felton, California, in an estate account established by Independent Administrator for the Administration of the Estate of Emma Charlene Taylor, deceased." (Docket Entry No. 24).

The court cannot grant an equitable lien of $137,902.35 against the estate because that amount of money does not remain in the estate's possession. But the court finds no authority

prohibiting the court from ordering an equitable lien on the $87,439.03 that the estate retains of the payment Transocean made by mistake.[1] The Supreme Court has held that a court may award equitable restitution through a lien only on particular funds in the defendant's possession, *Great-West Life*, 534 U.S. at 214, and that ERISA does not create an "exception" if a defendant dissipates those funds. *See Montanile*, 577 U.S. at 148. When, as here, the amount remaining in a defendant's possession is less than the amount the plaintiff would otherwise be entitled to receive, the equitable lien will give the plaintiff some, but not all, of what it paid in the first place.

The court awards Transocean an equitable lien on the $87,439.03 of the funds disbursed from Transocean to the estate that are currently held in the estate's account at Liberty Bank in Felton, California.

**C. Attorney's Fees**

Transocean has asked that the estate be ordered to pay its reasonable attorneys' fees and costs. (Docket Entry No. 26, at 3). Section 502(g) gives a court discretion to "allow a reasonable attorney's fee and costs . . . to either party." 29 U.S.C. § 1132(g)(1). A court's decision to award or deny attorney's fees is reviewed for abuse of discretion. *Wegner v. Standard Ins. Co.*, 129 F.3d

[1] The court ordered the parties to submit supplemental briefs addressing whether 29 U.S.C. § 1132(a)(3) allows the court to award an equitable lien in an amount less than the $137,902.35 Transocean originally paid to the estate. (Docket Entry No. 25). Transocean responded, stating that the court could impose a constructive trust or grant an equitable lien for the $87,439.03 in remaining Plan benefits in the estate's possession. Although Transocean cited cases for the general proposition that a court "may award equitable restitution by imposing a lien on 'particular funds or property in the defendant's possession,'" Transocean did not direct the court to any case involving the award of an equitable lien on an amount less than the total benefits wrongfully paid. (*See* Docket Entry No. 26). The estate, on the other hand, chose not to respond, informing the court that it thought the court's order for supplemental briefing was optional. It was not. Regardless, the court assumes that the estate's decision not to respond reflects implicit agreement with Transocean's view that a court may impose a lien on the $87,439.03 remaining in the estate's possession, even if that amount is less than what Transocean originally disbursed.

814, 820–21 (5th Cir. 1997). "Although the decision to award attorneys' fees is discretionary," a court should consider five factors in deciding whether to award or deny fees:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing party would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

*Wegner*, 129 F.3d at 821.

Here, the court finds that these factors counsel against awarding attorneys' fees. The error that led to this lawsuit was Transocean's error. Transocean's Administrative Committee reviewed the estate's request for benefits, approved the request, and paid the benefits to the estate. Only after Jerome Taylor sued Transocean several years later did Transocean realize its error, seek voluntary repayment by the estate, and sue when it declined. Transocean filed its motion for summary judgment without much information about the current location, amount, or status of the funds. Transocean provided the estate's bank statement from August 2020, showing that the funds had been deposited into the estate's account. (Docket Entry No. 19-1, at 109). Transocean also asserted in its May 2022 brief that a year earlier, on a May 7, 2021, call, "Defendant's counsel represented that the benefits paid to Defendant were sitting in the estate's account." (Docket Entry No. 21, at 6). Only after the court inquired, did Transocean learn how much presently remained in the estate's account. Given the reason this case had to be litigated in the first place and the work

required to do so, the court finds that Transocean should bear its own fees and costs. Its request for an award of fees and costs is denied.

**D. The Estate's Third-Party Complaint**

There is one final issue. The estate administrator filed a third-party complaint against Jerome Taylor, asserting that he is liable to Charlene Taylor's estate for all or part of Transocean's claim in the amount of $137,902.35, because the divorce decree "ordered and decreed that the 'individual retirement accounts, simplified employee pensions, annuities, and variable annuity life insurance in the wife's name' were awarded to [Charlene Taylor] as her sole and separate property." (Docket Entry No. 14, at 3).

Despite filing a claim against Jerome Taylor in February 2022, the estate never served him. Nor did the estate mention its claims against Jerome Taylor in its motion for summary judgment, or at any point since.

The estate's third-party complaint does not appear to be supported by Rule 14 of the Federal Rules of Civil Procedure. Rule 14(a) provides that a defendant may bring in a third party "who is or may be liable to him for all or part of the plaintiff's claim against him." Jerome Taylor is not liable to the estate for any part of Transocean's claim under ERISA for equitable relief against the estate. The estate paid the ERISA plan benefits to Jerome Taylor because he was Charlene Taylor's designated beneficiary. Whether Jerome Taylor was entitled to keep those funds, or whether he should have paid those funds to the estate under the divorce decree and state law, is a different, and separate matter. *See Hennig v. Didyk*, 438 S.W.3d 177, 184 (Tex. App. 2014) (citing *Sweebe v. Sweebe*, 474 Mich. 151, 712 N.W.2d 708, 712 (Mich. 2006) ("[W]hile a plan administrator must pay benefits to the named beneficiary as required by ERISA, this does not mean that the named beneficiary cannot waive her interest in retaining these proceeds. Once the

proceeds are distributed, the consensual terms of a prior contractual agreement may prevent the named beneficiary from retaining those proceeds.")); *see also id.* (citing *Partlow v. Person*, 798 F. Supp. 2d 878, 885 (E.D. Mich. 2011) ("The law recognizes a distinction between a plan administrator's obligation to pay over benefits to a named plan beneficiary and that beneficiary's entitlement to keep those funds thereafter.")).

Charlene Taylor's estate may have a breach-of-contract or another state law basis for seeking payment of the money Jerome Taylor received from Transocean. *See, e.g.*, *Flesner v. Flesner*, 845 F. Supp. 2d 791, 799 (S.D. Tex. 2012). That is a contract or state-law dispute that can be resolved in state court or, if diversity jurisdiction is present, in federal court. But it is not part of this ERISA dispute.

The court grants Transocean's motion to dismiss, enters final judgment, and closes this case.

## IV. Conclusion

Transocean's motion for summary judgment, Docket Entry No. 19, is granted, and the estate's cross-motion for summary judgment, Docket Entry No. 20, is denied. Transocean is entitled to an equitable lien on the $87,439.03 in funds remaining in the estate's possession. Final judgment is entered by separate order.

SIGNED on July 5, 2022, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge